IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY COOPER,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 5:26-cv-0629<br><br>DISTRICT JUDGE MICHAEL J. HENDERSHOT<br><br>MAGISTRATE JUDGE JAMES E. GRIMES JR.<br><br>**REPORT & RECOMMENDATION** |

Plaintiff Timothy Cooper filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying supplemental social security income. Doc. 1. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the Court reverse and remand the Commissioner's decision.

**Procedural background**

In February 2024, Cooper applied for supplemental security income, alleging a disability onset date of January 1, 2024.[1] Tr. 70. Cooper claimed that he was disabled and limited in his ability to work due to anxiety, bipolar

---

1 "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 22, 425 (6th Cir. 2006).

disorder, post-traumatic stress disorder (PTSD), and various substance abuse problems, including abuse issues related to cannabis, opioids, alcohol, and cocaine. Tr. 251. The Commissioner denied Cooper's application initially, Tr. 87, and on reconsideration, Tr. 101. Cooper then requested a hearing before an administrative law judge (ALJ). Tr. 102–03.

In April 2025, an ALJ held a telephonic hearing. Tr. 36. Cooper, who was represented by counsel, appeared and testified. *See* Tr. 34, Tr. 36–52. Qualified vocational expert Lynn Smith also testified. Tr. 52–59. The following month, the ALJ issued a written decision finding that Cooper was not entitled to benefits. *See* Tr. 17–28. After the Appeals Council declined further review, Tr. 1, the ALJ's decision became final, *see* 20 C.F.R. § 404.981.

Cooper timely filed this action in March 2026. Doc. 1. In his brief, Cooper presents a single issue for review:

> The ALJ's Step 1 evaluation is not supported by substantial evidence.

Doc. 7, at 2.

**Evidence**[2]

*Personal and Vocational Evidence*

Born in 1988, Cooper was 35 years of age on the alleged disability onset date. Tr. 217. He attended high school through the tenth grade but did not

---

[2] The recitation of evidence is not intended to be exhaustive and is generally limited to the evidence cited in the parties' briefs and relevant to their arguments.

graduate. Tr. 38, 213. He did not obtain a GED. Tr. 53. In 2022, Cooper worked at McDonald's for six months. Tr. 53–54. He then had various full-time and part-time jobs in 2023 but none of them lasted for more than two months. Tr. 253. In his application, Cooper reported that he could not maintain employment because he was "bored and sidetracked easily" and would "go off" on another person if the person said something that he did not like. Tr. 251. At the April 2025 administrative hearing, Cooper reported that he had been a full-time employee at Broadway Auto, working five days a week and eight hours a day. Tr. 49; *see* Tr. 245.

*Medical Evidence*

Long before his January 2024 alleged disability onset date, Cooper received mental health services for anxiety, bipolar disorder, PTSD, and substance use problems. *See* Tr. 307–27. In early 2023, Cooper reported that he smoked marijuana "regularly," Tr. 312, 318, and had used heroin and methamphetamine just months before, Tr. 318. He also had "been punching walls and punching [him]self" due to anger. Tr. 312. Tr. 312. During his treatment sessions, however, Cooper was calm and cooperative, with concrete thoughts and an appropriate affect. Tr. 314, 318.

Cooper continued to receive mental health treatments in January 2024 and afterward. According to the ALJ:

> In January 2024, the claimant attended another treatment session. The claimant reported that he was tolerating the use of Invega Sustenna well. (B1F/22). The claimant reported that he

experienced reduced anger and anxiety. The claimant indicated that his mood was stable. During the treatment session, the claimant was cooperative. The claimant's speech was normal. The claimant's thought processes were unremarkable with logical association and unremarkable stream of thought. The claimant's thought content was free of delusions and hallucinations. The claimant continued to be treated with Invega and counseling. (B1F/22-24).

When treated in May 2024, the claimant reported having a history of bipolar disorder, PTSD, depression, and anxiety with increased irritability and anger. He also endorsed having a history of stimulant and opiate use. The treatment provider observed that the claimant's mood was anxious. The claimant was tense. The claimant displayed signs of psychomotor agitation. His attention and concentration were impaired. Nevertheless, the claimant displayed normal insight and judgment. The claimant's thought processes were logical with normal thought content. The claimant's perceptions were normal. The claimant's speech was clear. The claimant was cooperative. (B2F/88-93, 97).

The claimant's mood was anxious and depressed in June 2024. The claimant showed poor judgment, attention, and concentration. The claimant's behavior was appropriate for his age. The claimant did not show any signs of compulsive behavior. The claimant showed no signs of euphoria or fearfulness. The claimant showed no evidence of flights of ideas, grandiosity, hallucinations, or hopelessness. (B2F/81). The claimant's symptoms were treated with prescriptions for Effexor and Lithium (B2F/86).

In July 2024, the claimant appeared for treatment with an unkept appearance. The claimant was depressed and anxious. The claimant was agitated and showed signs of mood swings. The claimant displayed impairments to his attention and concentration. Despite these symptoms, the claimant's thought processes were logical with

normal perceptions and thought content. The claimant's insight and judgment were within normal limits. The claimant was treated with Invega, Clonidine, Lithium Carbonate, and Venlafaxine. (B2F/72-78). The claimant was also treated with individual therapy. (B2F/60-61, 67).

Later in the same month, the claimant's treatment led to improved symptoms. The claimant's mood was good. The claimant's thought processes were good. The claimant was able to help his father with gig work. (B2F/57-58, 64-66).

When treated in August 2024, the claimant reported that while he felt that "I have been doing better." The claimant's sister also appeared during the session and corroborated that the claimant's symptoms had improved. (B2F/52-53). The claimant's mood was euthymic with a full affect. His behavior was appropriate. The was no evidence of agitation. The claimant showed no signs of fearfulness, flight of ideas, forgetfulness, or hopelessness. The claimant's thought processes were logical. His perception and thought content were normal. The claimant's cognition was normal with intact memory, attention, or concentration. The claimant's insight and judgment were normal. (B2F/46-51). The claimant's medication regimen was stable.

In September 2024, the claimant reported that he continued to experience anxiety, but the claimant's depression had improved. The claimant's behavior, thought processes, and mood were all stable. (B2F/40-42). The claimant's functioning remained stable in October 2024. The claimant reported that he felt that his anger had improved despite continuing to experience occasional outbursts. (B2F/34-38). The claimant's medication regimen was amended to stop the use of Invega. All other medications continued to be prescribed. (B2F/36).

> During treatment in November 2024, the claimant requested a different, more effective, medication to manage his anger outbursts. However, the claimant indicated that he was not taking the medications currently prescribed to him as instructed. The claimant's treatment provider observed that the claimant was depressed, anxious, and angry. Nevertheless, the claimant's insight and judgment were normal. The claimant's thought processes remained logical with normal thought content and perception. The claimant's cognition was normal with intact attention, and concentration. (B2F/28, 30). The claimant's Invega prescription was restarted. All other medications were stable. (B2F/29).
>
> The following month, the claimant was depressed, anxious, and angry. Nevertheless, the claimant's insight and judgment were normal. The claimant's thought processes remained logical with normal thought content and perception. The claimant's cognition was normal with intact attention, and concentration. The claimant was cooperative with the treatment provider. (B2F/17-18). In January 2025, the claimant's thought processes were concrete, and he displayed partial insight. However, the claimant's thought content and perceptions were normal. The claimant's cognition was normal with intact attention and concentration. The claimant's judgment was normal. (B2F/10-13).
>
> In March 2025, the claimant reported that his attitude had improved. The claimant's judgment and insight were normal. The claimant's thought processes were logical with normal thought content and perceptions. The claimant's cognition was normal. (B2F/4; B4F).

Tr. 23–25.

Meanwhile, in April 2024, a state agency psychologist initially reviewed Cooper's claim.[3] As to Cooper's residual functional capacity (RFC),[4] the psychologist concluded that Cooper could "maintain[] attention and concentration for simple routine tasks" and "interact[] with others … in small group settings," despite having "difficulty taking orders from authority figures." Tr. 75–76. The psychologist added that Cooper was "moderately limited" in his ability to appropriately respond to work setting changes and therefore "would need major changes to a set work routine explained in advance and slowly implemented." Tr. 76. On reconsideration, another psychologist affirmed the initial conclusions regarding Cooper's RFC. *See* Tr. 79–85.

*Hearing Testimony*

Cooper, who was represented by counsel, testified at the administrative hearing in April 2025. Tr. 36, 38–47. Cooper lived in a house with his fiancé,

---

3 When a claimant applies for disability benefits, the state agency creates a record. The record includes the claimant's medical evidence. A state agency disability examiner and a state agency physician or psychologist review the claimant's record and determine whether—and how much—the claimant's condition affects his or her ability to work. If the state agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the state agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

4 A residual functional capacity (RFC) is an "assessment of" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

his sister, his sister's fiancé, and his sister's four children. Tr. 37. Cooper had a driver's license and occasionally drove to run errands, Tr. 38, but he did not like going outside because he does not "communicate with others very well." Tr. 46. Aside from limited interactions with his family and a few friends, Cooper spent two to three days each week isolated inside his bedroom. Tr. 48. Cooper also reported having "big arguments" with his sister and other family members at home. Tr. 46.

Although Cooper was taking four different mood stabilizers, he still had difficulty controlling his anger. Tr. 42. Cooper said that when he argued with his sister, he would "get to yelling and then … punching stuffs." Tr. 42. He had even "put [his] hand through glass" during a previous argument. Tr. 42. Cooper also reported anxiety, panic attacks, and nightmares. Tr. 46. Although his "nightmares ha[d] calmed down a lot," Tr. 46, Cooper said that he still had nightmares about five times over the last couple of months and could sleep only four to five hours at a time, Tr. 47. When the ALJ pointed out that Cooper had never mentioned his nightmares to his mental health providers, Cooper replied that he was "still trying to get in to see a counselor." Tr. 50. In addition, because Cooper often forgot birthdays, appointments, and household chores, he needed his sister to remind him a day or two before, Tr. 45, even about "the shower and stuff like that," Tr. 46.

Cooper had been working full time at Broadway Auto for the two months before his hearing, Tr. 39, but he missed work almost once a week, Tr. 49, and

did not believe that he could keep his job, Tr. 39. Cooper explained that he "tend[ed] to lose drive and ambition on a job" rather quickly, Tr. 49–50, and struggled to control his emotions in the workplace, Tr. 39–41. Specifically, Cooper stated that he would often "snap" when corrected by others, only to apologize later for losing his temper. Tr. 39. During his two-month tenure at Broadway Auto, Cooper had four outbursts. Tr. 41. In one of these incidents, Cooper threw a tire and cursed after being told to perform a task while already working on another. Tr. 39. On another occasion, Cooper shouted profanities at his manager while "punching stuff." Tr. 40–41. Cooper said that he had similarly left his position at McDonald's after "punch[ing] a hole in the back wall." Tr. 40. Nevertheless, Cooper testified that while at McDonald's, he was able to "do a little bit of working around people" and the environment "didn't really trigger [him] or anything." Tr. 51.

Qualified vocational expert, Lynn Smith, next testified. Tr. 54–58. Smith testified that an individual with Cooper's age, education, work history, and assessed RFC could not perform Cooper's past relevant work as a fast-food worker, but could instead work as a kitchen helper, packager, or floor waxer. Tr. 54. Smith clarified that each of these jobs involves full-time employment of 35 or more hours per week, Tr. 57, with no requirement to lead others, bear responsibility for work outcomes, or work as part of a team, Tr. 58. Smith, however, testified that the hypothetical individual would not be able to work if the individual was off task for more than ten percent of the workday or had

one unscheduled absence per month. Tr. 56. Smith added that the same individual would be unemployable if the person required extra supervision throughout the workday to remain on task. Tr. 56.

**ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant engaged in substantial gainful activity during the following periods: January 29, 2025 to the present (20 CFR 416.920(b) and 416.971 *et seq*.).
>
> 2. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.
>
> 3. The claimant has the following severe impairments: Bipolar Disorder, Post-Traumatic Stress Disorder ("PTSD"), Opioid and Stimulant Use Disorders. (20 CFR 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can attend to and carry out simple instructions. The claimant can occasionally interact with coworkers, supervisors, and the public. The

> claimant can adapt to occasional[] changes in the work setting or duties.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 7. The claimant was … 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 8. The claimant has a limited education (20 CFR 416.964).
>
> 9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, since February 6, 2024, the date the application was filed (20 CFR 416.920(g)).

Tr. 19–28.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ needs to follow a five-step sequential analysis to make a disability determination:

> 1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.
>
> 2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.
>
> 3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.
>
> 4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.
>
> 5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.* "The

claimant, however, retains the burden of proving her lack of residual functional capacity." *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of Review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the

Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

In his sole assignment of error, Cooper challenges the ALJ's finding at step one that he engaged in "substantial gainful activity" and was therefore not disabled from late January to May 2025. Doc. 7, at 6. Cooper admits that he was working at the Broadway Auto at the time of the administrative hearing. Doc. 7, at 6. He maintains, however, that the record lacked "clear evidence … to prove substantial gainful activity," such as pay stubs, tax forms, an hourly wage rate, or total earnings. Doc. 7, at 6–7.

Under the Social Security Act, "an individual who is working and engaged in substantial gainful activity is not entitled to disability benefits." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996); *see also* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment"). In turn, the regulations define "substantial gainful activity" as "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Work activity is substantial when it "involves doing significant

physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b). In determining whether a claimant has the ability to perform substantial gainful activity, an ALJ must consider: (1) the nature of the claimant's work; (2) how well the claimant performs; (3) whether the claimant's work is done under special conditions; (4) whether the claimant is self-employed; and (5) time the claimant spent working. 20 C.F.R. § 404.1573(a)–(e).

In determining whether an employee's work qualifies as substantial gainful activity, the "overarching consideration … is the amount of compensation" earned from the work. *Cardew v. Comm'r of Soc. Sec*, 896 F.3d 742, 747 (6th Cir. 2018); *see* 20 C.F.R. § 404.1574(a)(1). If a claimant earned more than threshold amounts set by the Social Security Administration, the claimant's earnings give rise to a presumption that the claimant engaged in substantial gainful activity. 20 C.F.R. § 404.1574(a)(1); *see also* Program Operations Manual System (POMS) DI 10501.015, *available at* https://secure.ssa.gov/poms.nsf/lnx/0410501015 (last visited Sept. 20, 2022) (listing monthly earning threshold levels for years 1978 through 2026).[5] To be sure, however, "'[t]he mere existence of earnings over the statutory minimum

---

[5] Programs Operations Manual System (POMS) is an internal manual that the Social Security Administration uses when evaluating Social Security claims. *See Davis v. Sec'y Health & Hum. Servs.*, 867 F.2d 336, 340 (6th Cir. 1989); *Beyler v. Comm'r of Soc. Sec.*, No. 5:22-cv-2283, 2024 WL 747191, at *3 (N.D. Ohio Feb. 23, 2024). Although POMS "does not have the force and effect of law, it is nevertheless persuasive." *Davis*, 867 F.2d at 340; *see Wohler v. Saul*, No. 1:19-cv-56, 2020 WL 1531296, at *13 (N.D. Ohio Mar. 31, 2020).

is not dispositive.'" *Cardew*, 896 F.3d at 747 (quoting *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990)). Instead, "[a] claimant may rebut the presumption created by earning more than the threshold amount 'with evidence of his inability … to perform the job well [or] without special assistance.'" *John-Abbass v. Soc. Sec. Admin.*, No. 1:21-cv-516, 2022 WL 1571623, at *3 (N.D. Ohio May 11, 2022), *report and recommendation adopted,* 2022 WL 1568477 (N.D. Ohio May 18, 2022) (quoting *Cardew*, 896 F.3d at 747 (alterations in original)).

In this case, the ALJ found that Cooper engaged in substantial gainful activity from late January through May 2025 based on his full-time employment at Broadway Auto. Tr. 20. The ALJ also observed that this "employment exceed[ed] the 2025 substantial gainful activity threshold." Tr. 20. There is, however, no evidence that "'a reasonable mind [could] accept as adequate to support [the ALJ's] conclusion.'" *Biestek*, 587 U.S. at 103 (citations omitted). As Cooper highlights, the record contains no pay stubs, tax forms, wage statements, or any other documentation that reflects his earnings during that period of employment. *See* Doc. 7, at 7; *cf. Aldea v. Astrue*, 828 F. Supp. 2d 396, 401 (D. Mass. 2011) (holding that the ALJ's consideration of "earning statements [that] were not in the record … constitutes a serious failure on [the ALJ's] part and is reversible error"). Any mention of the Broadway Auto employment is likewise missing from Cooper's earning reports. *See* Tr. 224–25, 226–32, 233–35. Indeed, the Commissioner concedes that Cooper "appears to

be correct that his actual wages for this work were not contained anywhere in the record." Doc. 9, at 5 n.2. Absent any evidence of Cooper's wages, the Court cannot ascertain how the ALJ concluded that Cooper earned more than "the 2025 substantial gainful activity threshold," Tr. 20, which is $1,620 per month, *see* POMS DI 10501.015, *supra*, available at https://secure.ssa.gov/poms.nsf/lnx/0410501015.

Nor does Cooper's full-time employment for months preceding the administrative hearing establish that Cooper engaged in substantial gainful activity during these months. As the Ninth Circuit aptly put, "substantial gainful activity means more than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time." *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999); *see Lillo v. Comm'r of Soc. Sec.*, No. 1:16-cv-1841, 2017 WL 3037501, at *10 (N.D. Ohio June 29, 2017) (citing *Gatliff*, 172 F.3d at 693–94), *report and recommendation adopted*, 2017 WL 3023762 (N.D. Ohio July 17, 2017); *see also Parish v. Califano*, 642 F.2d 188, 192 (6th Cir. 1981) ("The phrase 'substantial gainful activity' implies employment with some degree of regularity.").

Indeed, for disability benefits purposes, employment that lasts less than six months because of the claimant's impairments constitute "unsuccessful work attempts," and earnings from these short-term jobs do not qualify as evidence of an ability to engage in substantial gainful activity. *See* 20 C.F.R. § 416.974(a)(1), (c). Following this reasoning, if work activity that lasts for less

than six months does not show an ability to engage in substantial gainful activity, Cooper's employment, which commenced about two months before the administrative hearing, would not evidence an ability to engage in substantial gainful activity.[6] *See Gatliff*, 172 F.3d at 694 (explaining that "a job of two-months' duration is certainly insufficient" to establish that the claimant was capable of substantial gainful activity); *Dinsmore v. Comm'r of Soc. Sec.*, No. 1:08-cv-00422, 2009 WL 2057722, at *14 (S.D. Ohio July 14, 2009) ("[I]t is generally acknowledged that a claimant who cannot hold a job for more than two or three months at a time is not able to engage in substantial gainful employment."). This is especially true here, as Cooper offered uncontroverted testimony regarding his absenteeism and repeated outbursts at work. Because the ALJ failed to connect the evidence to his conclusion that Cooper engaged in substantial gainful activity from late January through May 2025, the ALJ's step-one analysis was erroneous.

---

6 This is not to say that Cooper's employment at Broadway Auto constitutes an unsuccessful work attempt. To show an unsuccessful work attempt, the claimant "must have stopped working or reduced [his] work and earnings below the substantial gainful activity earnings level because of [his] impairment." 20 C.F.R § 416.974(c)(2). Here, because the record contains no information regarding Cooper's earnings from his Broadway Auto employment, there is no evidence that Cooper was "forced … to reduce" his earnings from the work below the statutory threshold level. *Id.* In addition, other than his own testimony, Cooper offers nothing to show that he could not engage in substantial gainful activity because of his impairment. *See Price v. Comm'r of Soc. Sec.*, No. 1:21-cv-01172, 2022 WL 3155825, at *6 (N.D. Ohio Aug. 8, 2022) (holding that a claimant's reliance on her own statement to show unsuccessful work attempt is insufficient).

This error was also not harmless. As the Sixth Circuit has emphasized, "[a] court cannot excuse the denial of a mandatory procedural protection simply because … a different outcome on remand is unlikely." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004). And while courts in the Sixth Circuit have not determined whether a failure to consider a claimant's earnings at step one warrants reversal, "[o]ther courts have … found that an error at step one is not harmless—even if the ALJ proceeded through steps two through five—if the remainder of the ALJ's analysis was colored by [his] step one finding." *Ristom v. Kijakazi*, No. 20-725, 2022 WL 860251, at *5 n.7 (D.N.M. Mar. 23, 2022) (listing cases); *see Aldea*, 828 F. Supp. 2d at 401. Here, after finding that Cooper was not disabled for the period beginning January through May 2025, the ALJ expressly limited his consideration of the record to the remainder of the relevant period. Tr. 20. In bold typeface, the ALJ's written decision provided: "[t]he remaining findings [(i.e., the findings made at steps two through five)] address the periods the claimant did not engage in substantial gainful activity." Tr. 20. By bifurcating the analysis in this manner, the ALJ rested his denial of Cooper's disability claim on two separate grounds that correspond to two different timeframes. First, the ALJ found that Cooper was not disabled from late January through May 2025, based on the ALJ's step-one finding that Cooper engaged in substantial gainful activity. Second, the ALJ found that Cooper was not disabled for the remaining period—the twelve months from his alleged disability onset date through January

2025—based on the step-five determination that he retained the RFC to perform jobs existing in significant numbers in the national economy. This was reversible error. *See Ristom*, 2022 WL 860251, at *6.

The Commissioner insists that because the ALJ's RFC formulation "discussed medical records from January 2025 and March 2025"—the period during which the ALJ found that Cooper engaged in substantial gainful activity—"the ALJ's findings should stand regardless of whether the step one finding was not sufficiently supported for the brief period from January 2025 through the May 2025 decision date." Doc. 9, at 6. This argument, however, is unpersuasive. Although the ALJ referenced medical *evidence* from early 2025 in his written decision, *see* Tr. 24–25, the decision's plain language explicitly excludes that timeframe from steps two through five of the sequential analysis, instead only "address[ing] the period(s) [Cooper] did not engage in substantial gainful activity," Tr. 20. Because the ALJ did not consider the period between late January and May 2025 for steps two through five of the sequential analysis, setting aside the step-one finding would likely leave the ALJ's non-disability determination for those months entirely unsupported. Remand is therefore appropriate. *See Aldea*, 828 F. Supp. 2d at 401 (ordering remand when the sequential analysis "was adulterated by the ALJ's improper consideration of evidence not of record" at step one).

**Conclusion**

For the reasons explained above, I recommend that the Court reverse and remand the Commissioner's decision.

Dated: September 24, 2026

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).